OPINION OF THE COURT
Roger N. Rosengarten, J.
The People move to have this court reconsider its April 24, 1998 classification of the defendant for purposes of the Sex Offender Registration Act (Correction Law, art 6-C, § 168 et seq.; *859 hereinafter SORA). After reviewing the People’s motion, the applicable case law and the court files, the court rules as follows.
Procedural History
Defendant Winslow Harris pleaded guilty before this court on March 25, 1998 to violating Penal Law § 130.60, sexual abuse in the second degree, a class A misdemeanor, with a promised sentence of one year’s incarceration. The case was adjourned to April 24, 1998 for a sex offender risk determination pursuant to the Sex Offender Registration Act (commonly known as Megan’s Law). On April 24, 1998, the District Attorney advised this court that a stipulation had been entered into with the defendant’s attorney providing for the offender to be classified as a “level two” sex offender, despite the defendant’s prior record, which included a previous felony conviction for a sex offense. Albeit erroneously, the court agreed to honor the stipulation of the parties, and thereby made a risk level determination that the defendant be classified a level two (moderate risk). The defendant was released from custody on April 1, 1998. The court was not provided with a recommendation from the Board of Examiners until August 16, 1998, just prior to the People’s application herein. The court was not, therefore, given the opportunity, prior to the defendant’s discharge into the community, to review the Board’s recommendations that the defendant be deemed a level three sexually violent predator. The People made the instant application to revisit this court’s classification on September 8, 1998, more than four months after the court’s determination. The court adjourned the matter to October 1, 1998 for responsive papers from the defendant’s attorney and for oral argument. On that date, the matter was deemed submitted and set down for court decision.
Correction Law, Article 6-C, § 168 et seq. “Megan’s Law”
Since its effective date of January 21, 1996, there has been a significant body of case law devoted to the constitutional and procedural implications of SORA. (See, e.g., Doe v Pataki, 120 F3d 1263 [2d Cir 1997]; People v Afrika, 168 Misc 2d 618 [Sup Ct, Monroe County 1996]; People v Cropper, 170 Misc 2d 631 [Monroe County Ct 1996]; People v Ross, 169 Misc 2d 308 [Sup Ct, NY County 1996]; People v Nieves, 172 Misc 2d 346 [Sup Ct, Bronx County 1997].)
It is pertinent to note that New York’s Sex Offender Registration Act (Correction Law, art 6-C, § 168 et seq.) was intended *860 by the Legislature to protect the public from the recidivist tendencies of sex offenders, to assist the criminal justice system in identifying, investigating, apprehending and prosecuting sex offenders, and to comply with the Federal Crime Control Act. (See, People v Stevens, 91 NY2d 270, 275 [1998]; L 1995, ch 192, § 1, Legislative Findings and Intent, reprinted in McKinney’s Cons Laws of NY, Book 10B, Correction Law § 168, 1998 Pocket Part, at 82.)
In furtherance of same, a “quasi-regulatory” registration and notification scheme was devised with respect to individuals convicted of sex offenses, whereby these individuals would be classified based on a three-tier system. The Act provides that any individual convicted of an enumerated sex offense under Correction Law § 168-d is automatically classified as a sex offender, mandating compliance with the minimum registration and notification requirements of the statute. The statute also creates a Board of Examiners of Sex Offenders to develop and promulgate guidelines to assess the risk of repeat offenses by an individual offender and the corresponding threat posed to public safety. (See, People v Roe, NYLJ, Aug. 19, 1998, at 24, col 6 [Sup Ct, Nassau County]; Correction Law § 168-Z [5].) The Board’s Risk Assessment Guidelines and Commentary, last revised in November of 1997, establishes the level of notification required of the offender as determined by a detailed point system assigning numerical values to 15 risk factors in four categories. An offender is assigned a presumptive level one (low risk), level two (moderate risk), or level three (high risk) classification by calculating the cumulative point score on each of the categories. The Board’s Risk Assessment Guidelines and Commentary provides four “overrides” which, when present, result in a departure from the presumptive level, based on the point score, and instead impose a presumptive level three risk assessment designation. The override pertinent to this case is a prior felony conviction for a sex crime. The Board treats factors such as a prior felony conviction for a sex crime as overrides because, in their view, these factors provide compelling evidence that an offender poses a serious risk to public safety. The Board or court may not depart from the presumptive risk level unless it concludes that there exists an aggravating or mitigating factor of a kind, or to a degree, not otherwise adequately taken into account by the Guidelines. (See, Risk Assessment Guidelines and Commentary [Nov. 1997].) The Board is also mandated to submit its sentencing recommendation to the sentencing court within 60 days from the defendant’s *861 release from custody “ ‘providing for one of* * * three levels of notification’ ”, based upon the perceived risk of reoffense. (See, People v Stevens, 91 NY2d 270, 275, supra, quoting Correction Law § 168-Z [6].)
Individuals designated as “level three” are deemed to be “sexually violent predators”. These individuals are subject to the widest notification and dissemination parameters. (Correction Law § 168-Z [6] [c].)
Issue
May a court that adopted a sex offender risk level determination stipulated to by the People and the defendant’s counsel for purposes of the SORA vacate the stipulation to correct an error in the risk level classification? For the reasons stated below, the court concludes that the aforementioned stipulation should not have been adopted by the court in its classification of the defendant as a “level two” sex offender, and the defendant must now be deemed, nunc pro tunc, a “level three” sex offender.
Legal Conclusions
But for the stipulation by the People, the defendant would have received a presumptive risk assessment level three designation, based upon his prior felony conviction for a sex crime, and the absence of any mitigation warranting a departure from the override. In seeking to give legal force and effect to the parties’ stipulation, the court has inadvertently abrogated to the parties a function that is exclusively within the province of the court.
Unlike the terms of a plea agreement or sentence, discrete risk level determinations are not the proper subject of a stipulated outcome. (See, People v Stevens, supra, at 276-277.) In Stevens, the Court of Appeals held that a risk level determination is not appealable as a portion of a sentence that becomes incorporated into a judgment of conviction. The Court therein stated that (at 276) “Whatever else the determination may be or be classified as, we are satisfied that it and its registration and notification requirements under the Act * * * are not a traditional, technical or integral part of a sentence that somehow relates back to or becomes incorporated into the antecedent judgment of conviction”.
The Court therein, while declining to pass upon the “ ‘true nature’ ” of the proceeding, and whether the Court is acting “qua court” or as a distinct “quasi regulatory entity” (People v *862 Stevens, supra, at 279), did find that the risk level determinations are a “consequence of convictions for sex offenses, but are not a part of the criminal action or its final adjudication”. (People v Stevens, supra, at 277.) This same logic dictates that the function of assigning a sex offender risk level determination is exclusively a regulatory function of the court, which cannot be the proper subject of a stipulated finding, particularly where, as here, there exists an override for which there is no mitigating factor justifying a departure from the presumptive level.
Given the above, and the policy mandates of the statute, the court is mindful of the need to ameliorate the situation as it now stands. Since the risk level classifications are not properly incorporated within a sentence or judgment, they are not properly reviewable pursuant to CPL article 440. Moreover, even assuming that the SORA determination was considered as a part of a plea or sentence, the court would not have inherent power to vacate a plea and sentence for other than to correct a ministerial or clerical error. (See, People v Moss, 234 AD2d 610 [2d Dept 1996].)
However, within the context of SORA, at least one other court has invoked its inherent power to correct its own records in order to remedy an inadvertent omission in failing to certify a sex offender as mandated by statute. (See, People v Griffin, 171 Misc 2d 145, 150 [Sup Ct, NY County 1996].) In the instant matter, using the same rationale, the court may correct its records and perform its duties under SORA by certifying the defendant as a risk level three offender, rather than a level two offender, based upon his felony conviction and the absence of any mitigation. The court must do so by appropriately amending the applicable court records and commitment order. (People v Griffin, supra.)
By taking this measure, the court is acting in compliance with the stated objectives of the statute in protecting the community from the risk of sexual victimization and in properly balancing the rights of the individual against the overriding interests of the many in public safety. The court notes that it had not received the Board’s recommendation in this matter, which is dated August 14, 1998 (and which is mandated by Correction Law § 168-Z [6] within 60 days of the defendant’s release), until August 16, 1998, several months following the defendant’s discharge. Accordingly, had it not adopted the stipulated classification, it would not have been able, in the absence of the aforesaid recommendation, to make a determination in compliance with Correction Law § 168-n (1) and (2).
*863 Accordingly, in the interest of completeness, public safety, and compliance with Correction Law § 168-d (1), the court certifies the defendant as a level three sex offender nunc pro tunc, to March 25, 1998, the date of his plea, and directs the amendment of the commitment order to include such certification nunc pro tunc to the date of his sentencing, also on March 25, 1998.