*980 OPINION OF THE COURT
James Hudson, J.
Ordered that the People’s application to reopen the Sex Offender Registration Act hearing is granted to the extent that a hearing pursuant to Correction Law § 68-d (3) is scheduled for November 13, 2007 at 2:00 p.m. and it is further ordered that the People are directed to provide to the court and Mr. Hahlbohm a written statement setting forth the determinations sought by the District Attorney’s Office together with the reasons for seeking such a determination at least 15 days prior to the determination proceeding; and it is further ordered that Mr. Hahlbohm’s cross motion to decrease the amount of time that he must comply with global positioning satellite (GPS) monitoring in his order of probation is denied.
Before the court is a motion by the People to reopen a Sex Offender Registration Act (SORA) hearing pursuant to CPLR 2221. The defense opposed the motion and cross-moved to modify the conditions of Mr. Hahlbohm’s sentence pursuant to GPL 410.20 (1), specifically the duration of time that he is required to be under GPS supervision. The People opposed the cross motion.
Mr. Hahlbohm pleaded guilty to criminal sexual act in the second degree on January 18, 2007 and was sentenced on March 19, 2007 to five months’ incarceration and 10 years’ probation with sex offender, drug and alcohol conditions. At sentencing the court was required to determine the level of notification pursuant to section 168-d (3) of the Correction Law. The People presented a sex offender registration and risk assessment instrument with a score of 65 and recommended a level one level of notification. Level one offenders are required to register for 20 years. Mr. Hahlbohm waived his right to a hearing on this matter and consented to the People’s recommendation.
On June 5, 2007, the People filed the instant motion requesting that Mr. Hahlbohm be reassessed as a level two offender which requires lifetime registration. The reason given for the application is because the People inadvertently failed to assess points to risk factor 7 on the sex offender registration and risk assessment instrument concerning the offender’s relationship with the victim. Mr. Hahlbohm was a teacher at the school in which the victim attended. He was not the victim’s teacher; however, that was how Mr. Hahlbohm knew the victim. Mr. Hahlbohm also coached soccer at the Longwood Youth Sports Association and involved the victim with his soccer team. Mr. *981 Hahlbohm took the victim to his home for overnight stays after soccer practices and eventually had the victim move into his home. The People argued that based on the professional relationship as well as the fact that the defendant developed the relationship solely for the purpose of abusing the victim, the defendant should have received an additional 20 points on the risk assessment instrument thereby elevating Mr. Hahlbohm’s SORA designation to a level two offender.
The People based their application on CPLR 2221, a motion for leave to renew or reargue a prior motion. The pertinent portion of the statute reads as follows:
“(d) A motion for leave to reargue:
“1. shall be identified specifically as such;
“2. shall be based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion, but shall not include any matters of fact not offered on the prior motion; and
“3. shall be made within thirty days after service of a copy of the order determining the prior motion and written notice of its entry. This rule shall not apply to motions to reargue a decision made by the appellate division or the court of appeals.
“(e) A motion for leave to renew:
“1. shall be identified specifically as such;
“2. shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination; and
“3. shall contain reasonable justification for the failure to present such facts on the prior motion.
“(f) A combined motion for leave to reargue and leave to renew shall identify separately and support separately each item of relief sought. The court, in determining a combined motion for leave to reargue and leave to renew, shall decide each part of the motion as if it were separately made. If a motion for leave to reargue or leave to renew is granted, the court may adhere to the determination on the original motion or may alter that determination.”
Mr. Hahlbohm opposed the People’s application on several grounds. The defense argues that a motion to reargue pursuant *982 to CPLR 2221 (d) (2) “may only be based upon matters of fact allegedly overlooked or misapprehended by the Court in determining a motion, [and] the reargument application may not include any matters of fact not offered on the prior motion.” Here, the defense argues, the People are asking the court to consider additional facts not presented to the court at the initial determination. Since the court did not overlook or misapprehend what was presented to it, reargument should not apply. Furthermore, defense argues that the People’s motion to reargue is untimely since it was not made within 30 days after notice of the court’s determination (see CPLR 2221 [d] [3]).
The defense also argues that the People’s application should not be considered a motion to renew because while such an application may be made based upon new facts not previously offered in the prior motion, the People failed to present a reasonable justification for their failure (see CPLR 2221 [e] [2], [3]). What the People are attempting to do, the defense argues, is improperly present old facts which they knew existed at the time of their original application as new facts in a motion to renew.
The defense further argues that when Mr. Hahlbohm consented to the People’s recommended level one risk level assessment, there was no adverse determination. The defendant waived his right to a hearing, therefore implicitly, the defense argues, the People likewise waived their right to conduct a hearing; and therefore there is nothing to renew or reargue.
In support of their motion, the People relied on People v Wroten (286 AD2d 189 [4th Dept 2001]). The defendant in Wroten served his sentence for a sex crime and went before the trial court to determine his risk level assessment. At the hearing there was issue as to whether the defendant’s prior conviction for burglary from another state should be considered a violent felony and therefore elevate his score to a level three offender. The prosecution argued that the burglary in the other state occurred at a residential home and was therefore equivalent to New York’s burglary statute which is classified as a violent felony. The prosecutor thus argued that the defendant’s correct SORA score would make him a level three offender. The defense argued that although the burglary may be designated as a violent felony, the record does not show whether there was any actual violence in the defendant’s felony history. The People argued that actual violence is not relevant because the Risk Assessment Guidelines and Commentary indicate that the term *983 “violent felony” as used in the guideline has the same meaning as in Penal Law § 70.02 (1). The trial court ruled against the prosecution on this issue and designated the defendant a level two offender. One day after the order was signed, the People received documents detailing the circumstances of the defendant’s out-of-state burglary, which indicated that the burglary occurred at a residential home where the defendant entered the bedroom of a 12-year-old girl and subjected her to inappropriate touching and attempted to have sexual intercourse with her. The prosecutor believed this information would elevate the defendant’s risk level status under their judge’s assessment of the law. Three days after the signing of the initial order the prosecutor moved for reconsideration. Based on the new information the trial court amended its order and classified the defendant a level three offender. Its decision was confirmed on appeal.
The Wroten appellate court held that a trial court has the statutory authority to grant reargument and renewal pursuant to CPLR 2221 in Sex Offender Registration Act risk level determinations (Wroten at 195). The appellate court noted that risk level determinations have traditionally been treated as civil matters, and not criminal in nature (id., citing People v Kearns, 95 NY2d 816, 818 [2000]; People v Hernandez, 93 NY2d 261, 270 [1999]; People v Stevens, 91 NY2d 270, 276-279 [1998]; People v Cash, 242 AD2d 976, 977 [4th Dept 1997]; People v Sumpter, 177 Misc 2d 492, 497 [Crim Ct, Queens County 1998]; see generally Matter of Vandover v Czajka, 276 AD2d 945 [2000]; Matter of New York State Bd. of Examiners of Sex Offenders v Ransom, 249 AD2d 891 [4th Dept 1998]) and that the legislature explicitly incorporated CPLR articles 55, 56 and 57 into New York’s Sex Offender Registration Act (Correction Law § 168-d [3]; § 168-k [2]; § 168-n [3]; § 168-o [l]-[3]) to grant either party the right to take a civil appeal from a risk level determination. CPLR articles 55, 56 and 57 refer to the granting or denial of motions for reargument or renewal, the appealability or nonappealability of orders as of right, the reviewability of such orders on appeal from other orders, and the effect of such motions and orders upon related appeals {see CPLR 5517 [a] [1], [3]; [b]; 5701 [a] [2] [viii]). The Wroten court made it clear that SORA proceedings are civil in nature and were subject to the civil motion practice, specifically motions to renew and reargue (CPLR 2221).
The Wroten court went on to find that the prosecution made a proper motion to reargue pursuant to CPLR 2221 (d), that the *984 prosecutor correctly argued the defendant’s out-of-state burglary conviction should have been treated as a violent felony, and that the court should have assessed the defendant the additional points. In failing to do so, the court “misapprehended or overlooked the determinative facts and controlling principles of law” Wroten at 198). The court also found, in the alternative, that the prosecution made a proper motion to renew under CPLR 2221 (e). The new information obtained by the prosecutor conclusively showed that the out-of-state burglary was a violent felony with sexual overtones. The information in question consisted of “new facts not offered on the prior motion that would change the prior determination” and that the “People had reasonable justification for [failing] to present ... on the prior motion” (Wroten at 198) — presumably, the reasonable justification for failing to present the additional facts at the original determination was because the prosecution was correct on the law and therefore did not expect that they would need the additional information to have the defendant designated a level three offender. The Wroten court strictly applied the rules for motions to renew and reargue (CPLR 2221) to the facts in their case. It gave no indication that its standards should be relaxed in sex offender registration proceedings.
The case at bar is significantly different from the Wroten case. The People never argued that Mr. Hahlbohm’s relationship with the victim should increase his risk level assessment score. On the risk assessment instrument under risk factor 7, “relationship with victim,” the People did not assess any points to this factor. This is the first time they have raised Mr. Hahlbohm’s relationship with the victim as an issue. Therefore this is not a motion to reargue (CPLR 2221 [d] [2]) because a motion to reargue must be “based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion.” The People’s motion is requesting the court to consider “matters of fact not offered on the prior motion” which is against the directives in CPLR 2221 (d) (2). The court finds nothing to support the People’s assertion that their “application was properly ‘based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion’ ” (People’s affirmation ¶ 15).
As noted herein, a motion based on new facts is a motion to renew (CPLR 2221 [e]). The new facts must have been previously unavailable at the time of the original motion (Bulis v Di Lorenzo, 142 AD2d 707 [2d Dept 1988]; Cong. Bais Rabbenu v *985 26 Adar N.B. Corp., 282 AD2d 642 [2d Dept 2001]). If the new facts were available but not presented at the original motion, the movant must provide a reasonable justification for his or her failure to present such facts on the prior motion (CPLR 2221 [e] [3]). Where new facts were available at the initial application but were not presented because of the movant’s lack of diligence, renewal will not be granted (Yarde v New York City Tr. Auth., 4 AD3d 352 [2d Dept 2004]; Allstate Ins. Co. v Davis, 23 AD3d 418 [2d Dept 2005]; Matter of Cooke Ctr. for Learning & Dev. v Mills, 19 AD3d 834 [3d Dept 2005]).
In the case at bar the People’s papers did not give a reasonable justification for their failure to assess points to Mr. Hahlbohm’s relationship to the victim. The People’s papers merely indicate that in their initial preparation of the risk assessment instrument the defendant was assessed 20 points for his relationship with the victim, but upon their final completion those 20 points were mistakenly excluded and therefore not presented to the court (People’s affirmation ¶ 6). “The People were aware of the defendant’s relationship with the victim and mistakenly omitted points based on that relationship from the Risk Assessment Instrument” (People’s affirmation H 15). It seems that the alleged new facts were available to the People while the initial motion was pending but were not presented because of the movant’s lack of diligence. Such circumstances cannot support a motion to renew (Yarde v New York City Tr. Auth., 4 AD3d 352 [2d Dept 2004]; Allstate Ins. Co. v Davis, 23 AD3d 418 [2d Dept 2005]; Matter of Cooke Ctr. for Learning & Dev. v Mills, 19 AD3d 834 [3d Dept 2005]).
The defense, however, brings up an interesting argument in that, unlike the situation in Wroten, there was never a hearing in Mr. Hahlbohm’s risk assessment proceeding. No facts were presented. Mr. Hahlbohm’s level one designation was on consent and therefore there is nothing to renew or reargue. This brings up the question — can a court vacate a stipulated risk level classification to correct an error in the risk level classification? This question must be answered in the affirmative.
In People v Harris (178 Misc 2d 858 [Sup Ct, Queens County 1998]) the court reopened and modified a defendant’s risk level assessment even though the original risk level designation was entered into on consent. In Harris, the State and the defendant stipulated to a level two SORA risk level designation. The court went along with the stipulation and the defendant was classified a level two offender, despite the defendant’s prior felony *986 conviction for a sex crime. This information was unknown to the court because the Board of Examiners failed to provide their recommendation to the court within 60 days of the defendant’s release as required by Correction Law § 168-Z (6). The Board of Examiners’ report was not provided until after the defendant’s release date. The defendant was released from custody on April 1, 1998. In August of 1998 approximately SVa months after his release, the court received the Board of Examiners’ recommendations which requested that the defendant be deemed a level three sexually violent predator because of his prior felony conviction. The People then made an application to revisit the court’s classification in September of 1998, more than four months after the court’s original determination. At this proceeding the court reclassified the defendant as a level three offender.
The Harris court based its decision on its inherent power to correct its own record in order to remedy an inadvertent omission in failing to certify a sex offender as mandated by statute. The court reasoned that but for the stipulation by the People, the defendant would have received a level three risk assessment based on his prior felony conviction for a sex crime. In giving legal force to the party’s stipulation, the court inadvertently abrogated to the parties one of its exclusive functions (Harris at 861).
In reaching this decision, the Harris court recognized that it may not have the power to vacate a stipulated plea and sentence that was originally approved by the court (Harris at 862, citing People v Moss, 234 AD2d 610 [2d Dept 1996]). SORA proceedings, however, are not criminal in nature. In People v Stevens (91 NY2d 270 [1998]), the Court of Appeals held that a risk level determination is not appealable as a portion of a sentence. The Court therein stated that
“[w] hate ver else the determination may be or be classified as, we are satisfied that it and its registration and notification requirements under the Act . . . are not a traditional, technical or integral part of a sentence that somehow relates back to or becomes incorporated into the antecedent judgment of conviction” (Stevens at 276).
The Stevens court held that risk level determinations are a “consequence of convictions for sex offenses, but are not a part of the criminal action or its final adjudication” (Stevens at 277). Based on this holding, the Harris court reasoned that the function of assigning a sex offender risk level determination is *987 exclusively a regulatory function of the court, which cannot be the proper subject of a stipulated finding (Harris at 862).
The Harris case is analogous to the case at bar. Correction Law § 168-d (3) states in part that:
“For sex offenders released on probation .. .it shall be the duty of the court applying the guidelines established in subdivision five of section one hundred sixty-eight-1 of this article to determine the level of notification pursuant to subdivision six of section one hundred sixty-eight-1 of this article and whether such sex offender shall be designated a sexual predator, sexually violent offender, or predicate sex offender as defined in subdivision seven of section one hundred sixty-eight-a of this article.” (Emphasis added.)
While the People failed to assign the 20 points to risk factor 7 on the risk assessment instrument, it is ultimately the court’s duty to determine the appropriate level of notification. This duty cannot be abrogated by a stipulation between the parties. At the time of the risk level designation proceeding, the court was aware of the relationship that Mr. Hahlbohm had with his victim. Mr. Hahlbohm was a teacher at the school the victim attended. He used his position to gain access to his victim and used his position as a soccer coach to cultivate a relationship with his victim for the sole purpose of abuse. The court should have, on its own accord, factored in this consideration when it determined Mr. Hahlbohm’s risk level assessment.
Under the inherent power doctrine, the court has the ability to correct its own records in order to remedy an inadvertent omission and to conform the record to the truth (Bohlen v Metropolitan El. Ry. Co., 121 NY 546 [1890]; People v Minaya, 54 NY2d 360 [1981]; People v Richardson, 100 NY2d 847 [2003]). The court, by doing so, would be acting in compliance with the stated objectives of protecting the community from the risk of sexual victimization and properly balancing the rights of the individual against the overriding interests of the many in public safety (see People v Stevens, 91 NY2d 270 [1998]; Correction Law § 168 et seq.; L 1995, ch 192, § 1, Legislative Findings and Intent, reprinted in McKinney’s Cons Laws of NY, Book 10B, Historical and Statutory Notes following Correction Law § 168).
Before the court takes such actions, however, it is aware that due process procedures within Correction Law § 168-d (3) afford the sex offender the right to be heard on such matters and *988 to contest any inaccuracies in a hearing. Therefore, the court hereby invokes its inherent power to correct the record in this case only to the extent that it shall schedule a hearing pursuant to Correction Law § 168-d (3) at 2:00 p.m. on November 13, 2007. The People are directed to provide to the court and the sex offender a written statement setting forth the determinations sought by the district attorney together with the reasons for seeking such determinations at least 15 days prior to the determination proceeding.
The court now turns to Mr. Hahlbohm’s cross motion to decrease the amount of time that he is required to be under GPS supervision. The order of probation did not specify the length of time Mr. Hahlbohm is to be under GPS supervision. Although the length of probation is 10 years, Mr. Hahlbohm argues that a 10-year period of monitoring is presumably unreasonable particularly since he was never provided notice thereof, nor offered an opportunity to argue for the imposition of a lesser time period.
The court does not consider 10 years of GPS monitoring to be unreasonable for a convicted child sex offender. Mr. Hahlbohm is convicted of criminal sexual act in the second degree, a class D felony. This conviction carries with it a possible seven-year period of incarceration. Instead, Mr. Hahlbohm, through the outstanding work of his attorneys, was able to negotiate a surprisingly lenient sentence with the People. It was only through the prestige of the prosecutor’s office that the court was willing to accept such a lenient sentence. Mr. Hahlbohm was a teacher who preyed on and victimized his students. He, by his own admission, abused his position of trust and authority in one of the most important and distinguished professions in our society to satisfy his own prurient interests. Not only was Mr. Hahlbohm a teacher, he was also a soccer coach to children. It is most disturbing to the court that Mr. Hahlbohm has focused his entire life around access to children. Ten years of GPS supervision is not unreasonable under these circumstances.
It was the intention of the court to have Mr. Hahlbohm monitored by GPS for 10 years. Although the length of monitoring was not specifically indicated in the order of probation, none of the other conditions in the order of probation specified the duration of its application because all the conditions in the order of probation are in effect for the duration of the order, specifically 10 years. The court finds it particularly troubling that of all the conditions in the order the only condition Mr. Hahlbohm objected to was the GPS monitoring.
*989 As for Mr. Hahlbohm’s argument that he never had an opportunity to argue the length of time he would be under GPS monitoring, counsel has not cited any authority for their right to do so. Mr. Hahlbohm has not expressed a reason why such monitoring would cause him any particular hardship other than the fact that he thought it was presumably unreasonable. Mr. Hahlbohm’s application for a hearing to decrease the amount of time that he is to be under GPS monitoring pursuant to his order of probation is denied. Mr. Hahlbohm would be well advised to keep in mind that the court has the authority to enlarge the conditions of probation at any time during his probation period (CPL 410.20).